**Floyd E. CUMBEY, Plaintiff-Appellant,**

v.

**Larry MEACHUM, Director, Gary Maynard, Warden, and Sharon Hartless, Defendants-Appellees.**

**No. 81–2467.**

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs Pursuant to Tenth Circuit Rule 9.

Decided Aug. 10, 1982.

A. Yes.

A. Yes.

.    .    .    .    .

Floyd E. Cumbey, pro se.

Jan Eric Cartwright, Atty. Gen., and Gloyd L. McCoy, Asst. Atty. Gen., State of Okl., Oklahoma City, Okl., for defendants-appellees.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

PER CURIAM.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Plaintiff, Floyd E. Cumbey, appeals the district court's dismissal of the complaint he brought pursuant to 42 U.S.C. § 1983, alleging that the use of female guards at the state prison where he is incarcerated violates his constitutional right to privacy. We vacate in part and remand.

The plaintiff is incarcerated at the Joseph Harp Correctional Center in Lexington, Oklahoma. In his pro se complaint he contends that female prison guards there are assigned to posts where they observe him dressing and undressing and using the toilet and the shower. The complaint alleges:

> At Joseph Harp Correctional Center each inmate occupies an individual solid-walled cell, containing a bed, a toilet and wash-face-basin [sic]. Each cell has a solid door, controlled by guards at the end of each Unit corridor, called a Control Room .... Each cell door has a clear glass window measuring about six inches by nine inches. The interior of the cell, including the bed, toilet and sink-basin, is visible to anyone in the corridor looking through the cell door window [sic]. Prison rules require an inmate during day and night not to cover the cell door window obstructing view [sic] at any time. If such occurr [sic] the inmate is subject to writeup-misconduct [sic] report for rule violation. Male inmates, while completely or partially unclothed are being subjected to "a certain amount of viewing" by female correctional officers ....

He also contends that he suffered cruel and unusual punishment because of a certain comment a female guard made regarding nudity of male inmates.

The plaintiff brought the action, requesting injunctive relief and damages, against the director of the state prison system, the

warden of the prison, and a female guard at the prison. Resting its decision solely on the complaint, the district court dismissed the action as frivolous, see 28 U.S.C. § 1915(d), finding that the plaintiff could not make any rational argument on the law or facts to support his claim. We disagree.

 There is a constitutional right to privacy. *See, e.g., Carey v. Population Services Int'l*, 431 U.S. 678, 684–86, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977); *Roe v. Wade*, 410 U.S. 113, 152–56, 93 S.Ct. 705, 726–28, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 484–86, 85 S.Ct. 1678, 1681–82, 14 L.Ed.2d 510 (1965). Although convicted prisoners are not entitled to the full protection of the Constitution, they "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). The state may restrict these rights only to the extent necessary to further the correction system's legitimate goals and policies. *Bell v. Wolfish*, 441 U.S. at 546, 548, 99 S.Ct. at 1877, 1878; *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether. *See, e.g., Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981).

Other courts have held that if guards regularly watch inmates of the opposite sex who are engaged in personal activities, such as undressing, using toilet facilities, or showering, the inmates' constitutional rights to privacy are being violated. *See Dawson v. Kendrick*, 527 F.Supp. 1252, 1316–17 (S.D.W.Va.1981) (male guards viewing female inmates); *Bowling v. Enomoto*, 514 F.Supp. 201 (N.D.Cal.1981) (female guards viewing male inmates); *Hudson v. Goodlander*, 494 F.Supp. 890 (D.Md. 1980) (female guards viewing male inmates); *Forts v. Ward*, 471 F.Supp. 1095 (S.D.N.Y.1979), *vacated in part*, 621 F.2d 1210 (2d Cir. 1980) (male guards viewing female inmates). *Cf. Smith v. Fairman*, 678 F.2d 52 (7th Cir. 1982) (frisks by female guards of male inmates, if carefully limited, do not violate the inmates' right to privacy).

■ Although the frequency of such practices is important, *see Hudson v. Goodlander*, 494 F.Supp. at 891; *Avery v. Perrin*, 473 F.Supp. 90, 92 (D.N.H.1979), the plaintiff's statement that the male inmates were subject to a "certain amount of viewing" by female guards does not necessarily fall short of a cognizable constitutional claim. The district court thus erred in dismissing the entire action as frivolous. *See, e.g., Phillips v. Carey*, 638 F.2d 207, 208–09 (10th Cir.), *cert. denied*, 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981); *Ragan v. Cox*, 305 F.2d 58, 60 (10th Cir. 1962). Accordingly, we vacate this portion of the district court's order.

■ The district court, however, correctly dismissed as frivolous the plaintiff's claim that a comment made by a guard constituted cruel and unusual punishment. A single comment clearly falls short of the Eighth Amendment's proscriptions. *See, e.g., Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976).

The order of the district court is hereby affirmed in part and vacated in part, and the matter remanded for further proceedings consistent with this opinion.